UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| GEORGE ROSAS, | ) |
| | ) |
|    *Plaintiff*, | ) |
| | ) |
| v. | )   Civil Action No: SA-14-CA-827-XR |
| | ) |
| SUSAN REED, *Bexar County District Attorney*, ET AL., | ) |
| | ) |
| | ) |
|    *Defendants*. | ) |

**ORDER**

Before the Court are Plaintiff George Rosas's 42 U.S.C. § 1983 Civil Rights Complaint (docket no. 1), the Magistrate Judge's Report and Recommendation (docket no. 16) concerning Plaintiff's motion for amended judgment and brief in support (docket nos. 13 and 14), and motion for emergency injunction (docket no. 15). The Magistrate Judge recommends that Plaintiff's motions for amended judgment be denied and his emergency injunction be granted in part and denied in part.

**I.   Background**

**A. History**

Plaintiff George Rosas filed a 42 U.S.C. § 1983 complaint, alleging that the Defendants (Bexar County District Attorney Susan Reed, Bexar County Sheriff's Office Criminal Investigator David Davila, and Corpus Christi Police Department (CCPD) Homicide Detective Eddie Alvarado) violated their promise to dismiss his state charge in exchange for information he provided on other criminal matters. Rosas is awaiting trial on a felon in possession of a firearm charge in the 226th Judicial District Court of Bexar County, Texas, cause no. 2014-CR-5767.[1]

---

[1] The case was still pending at Plaintiff's last advisory to the Court.

1

By his lawsuit, Rosas seeks 1) a declaratory judgment that Defendants violated his constitutional rights, namely his Eighth and Fourteenth Amendment Rights, 2) an injunction enforcing his alleged original "deal" with police officers to have his charges dropped and be immediately released from prison; and 3) compensatory and punitive damages. Later filings asked for a temporary restraining order, preliminary injunction, and "emergency injunction" seeking greater protection during his pretrial incarceration for his protection in prison.

Rosas was arrested on April 12, 2014 for "violating a protective order," leading to four felony charges and one misdemeanor charge. Docket no. 1 at 2. All "but a gun charge" were dismissed. *Id*. According to the Complaint, Rosas "is an active member of the Texas Syndicate (TS) prison gang." *Id*. Rosas "sent a letter to Defendant Reed in regards to" two homicides he had previously given information on to the Nueces County Police Department[2] (NCPD) on May 9, 2014. *Id*. Reed "ignored" this letter. *Id*. Rosas then contacted the NCPD "in regards to the homicides mentioned above." Rosas met with an Officer Rocha[3] "in the Jail Clinic, to pass on his information to Rocha, and was asked by Rocha what [Rosas] wanted in return. Rosas responded that he wanted his charges dismissed." *Id*.

On June 9 2014, Rosas met "with Defendant Davila. Again, Rosas passed on the homicide information." *Id*. In addition, Rosas had new information on a murder his cellmate allegedly perpetrated . . . ." *Id*. "Davila asked Rosas what his charges were and what [Rosas] wanted in return for his testimony. Rosas stated that he wanted his charges dismissed. Davila informed Rosas that he would get back to him on his decision." *Id*. On June 14, 2014, "Rosas was taken to [an] office for a recorded video interview or interrogation. The interview was conducted by Davila." An "FBI agent Willie" was also present. *Id*. Rosas "gave a lot more

---

[2] The Complaint appears to incorrectly use Nueces County Police Department and Corpus Christi Police Department interchangeably. It is uncertain whether Plaintiff means Nueces County Sheriff's Office.
[3] The full name was not provided.

information than initially agreed to. However, it was agreed that in exchange for Rosas [sic] assistance his charges would be dismissed." *Id*. at 3. Agent Willie "explained that CCPD detectives would see the interview and if the[y] felt the information was good, Davila would be sent the 'paperwork' to dismiss Rosas's charges." *Id*.

On June 26, 2014, Alvarado, a CCPD detective, came to interview Rosas. Alvarado showed Rosas photos of TS members and asked him to identify them. *Id*. The pictures were of men who committed the "hotel murder." *Id*. "Alvarado then informed Rosas that his information was good and that Alvarado would send the paperwork to get Rosas's charges dismissed for his cooperation. Alvarado then asked Rosas [sic] of another homicide" where the suspect was awaiting trial, involving a defendant named Diaz.[4] *Id*. Rosas said Diaz was innocent. *Id*. Rosas told Alvarado who the real "shooter" was, that it was another TS member, and "Alvarado did not like this piece of information by his reaction." *Id*.

Rosas was charged in state court with felon in possession on July 10, 2014. *Id*. "Davila informed Rosas that it was procedural and not to worry." *Id*. On July 11, 2014, Rosas met with his lawyer, "Garza,"[5] and "informed Garza of the agreement with Davila, however, Garza wanted no part of it and walked out of the visit." *Id*. On July 17, 2014, Davila had an appearance in state court on his gun charge. His lawyer, Garza, told Rosas that "the DA does not know about any deal." *Id*. at 4.

From June 26, 2014 to August 27, 2014, Rosas allegedly "made 13 calls to Davila passing information" about alleged crimes or inmates criminal cases. *Id*. On three of those calls, Davila "assured Rosas times [sic] that Davila was in contact with someone and that Davila was going to get Rosas's charges dismissed." *Id*. at 4. Davila allegedly "was waiting for Alvarado to

---

[4] He was later identified in filings as "Anthony Diaz."
[5] This person's full name was never provided.

3

send the paperwork." *Id*.  In one of those calls, Davila asked "Rosas if his gun charge was weak," and Rosas responded in the affirmative.  *Id*.  Davila allegedly "again promised Rosas not to worry, Davila would help him."  *Id*.  Davila was only "waiting for Alvarado to send the paperwork."  *Id*.

On July 23, 2014, "Rosas sent an affidavit to DA Reed and [state court judge] in regards to rumors" that Rosas was "snitching," and his "deal with Davila."  He forwarded the same affidavit to Nueces County District Attorney Mark Skurka on August 19, 2014.  *Id*.  Rosas also sent an "injunction" to the judge on his criminal case and Reed informing them "in detail about the deal with Davila and Rosas."  *Id*.

On September 8, 2014, Rosas's court date on his gun charge was postponed.  It was the same day he was "scheduled to testify in the murder trial for the innocent individual, [Diaz]."  *Id*. at 5.  On September 10, 2014, Rosas met with his attorney (Garza) who spoke "with someone in the D.A.'s office and no one knows of any deal."  Rosas then allegedly said to his attorney, "if no one knows then why haven't they done anything about Davila using Reed to make false deals for information."  *Id*.

In his application for a temporary restraining order (docket no. 6), Rosas elaborated that on September 24, 2014, he arrived in Nueces County Jail "for the murder trial of Anthony Diaz, whom [Rosas] had informed to Defendant Alvarado was innocent ([Rosas] was testifying on behalf of Diaz)."  *Id*.  On September 30, 2014, Rosas visited with "Richard 'Rick' Rogers – Diaz's defense attorney – in which Mr. Rogers informed him that the prosecuting attorney in Diaz's trial had informed Diaz that [Rosas] was an informant and was making deals with [Corpus Christi Police Department] homicide and Bexar County Sheriffs about TS murders."  Docket no. 6 at 2.  "Based upon information and belief, it was revealed that TS members were

going to severely beat up or in accordance with TS bylaws Plaintiff was to be killed had he entered" a certain area in Nueces County Jail that was "the [TS ] tank, however classification was notified not to put" Rosas there. *Id*. In an advisory to the Court on October 9, 2014, Rosas argued that "there was no[] other reason for Defendant Alvarado and the state's attorney to divulge information that [Rosas] is an informant other than to retaliate against [Rosas] for testifying for Diaz." Docket no. 4 at 3.

Rosas purports to state claims against District Attorney Reed for violating his constitutional rights because she was "clearly aware" of Davila and Alvarado's "unlawful actions in using her 'office' to make 'backroom' deals with [Rosas] but failed to act constituting deliberate indifference in violation of the Due Process Clause of the Fourteenth Amendment." *Id*. at 6. Rosas seeks a declaratory judgment, compensatory and punitive damages, and an injunction against Reed to enforce and honor the alleged deal he made with Davila. He seeks dismissal of his charges and release from prison.

Rosas purports to state claims against Davila and Alvarado for "knowingly and intentionally" making Rosas "believe that Defendants were acting on behalf of the District Attorney's Office," and their actions constituted a "conspiracy." *Id*. at 5. In furtherance of the conspiracy, Davila and Alvarado allegedly "intentionally and knowingly and maliciously entered into an agreement with [Rosas] promising [him] that his criminal charges would be dismissed if [Rosas] became an informant in violation of the Fourteenth Amendment." *Id*. Also, as a result of their alleged promises, Rosas "divulged information of [Rosas's] criminal case to Davila, and this information could have been passed on to the" prosecutor to lead to an indictment, as well as Rosas's "intentions and strategies." *Id*. Rosas allegedly also did not ask for an "examining trial" in state court due to the promises. *Id*. at 5-6. Lastly, Rosas allegedly told Davila that the

5

agreement had caused him, "stress, anxiety, and paranoia," because Defendants' actions have made the "safety of [Rosas] and his family . . . unbearable." *Id*. at 6.

The Complaint sought several types of relief from each defendant: 1) a declaratory judgment against all Defendants for violating his constitutional rights; 2) an injunction against Reed seeking that she enforce his agreement with Davila (charges dropped and his immediate release); and 3) compensatory and punitive damages.

On October 6, 2012, this Court stayed and administratively closed this case pursuant to *Wallace v. Kato*, 549 U.S. 384, 393–94 (2007) until Rosas's pending criminal charges were resolved. This Court noted that in *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994), the Supreme Court held a § 1983 claim for damages that "necessarily impl[ies] the invalidity of his conviction or imprisonment" does not accrue until that conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Docket no. 3.

On October 20, 2014, Rosas filed a motion to amend his complaint to clarify Reed's "capacity as defendant and changing" the paragraphs requesting declaratory relief. He also sought to include a class action claim on behalf of all Bexar County Adult Detention Center inmates who are allegedly misled into providing information against other individuals, based upon the false promise that charges will be dismissed. Rosas claims that is the policy of the district attorney and police department. Docket no. 5. Rosas also filed a motion for a temporary restraining order, claiming he was in danger and that the Defendants "have a responsibility to protect [Rosas], and infringed [Rosas's] constitutional rights when defendants intentionally misled Plaintiff into becoming an informant and further injured [Rosas] by intentionally and

maliciously revealing [Rosas's] identity to TS members' defense attorney." Docket no. 6.

Rosas thereafter filed a "supplemental complaint." Docket no. 8. In the supplemental complaint, Rosas states that at his meeting with Diaz's attorney, Rick Rogers, the prosecuting attorney ("JDP"), "attempted to trick Diaz by showing Diaz part of the video interview" Rosas made for Davila. *Id*. at 2. JDP told Diaz and Rogers that Rosas "was an informant and that the video was [Rosas] making deals with law enforcement against TS members." *Id*. According to the amended complaint, Diaz's murder charges were dropped the following day. The supplemental complaint further claims the video was "given to JDP by Alvarado," which "had nothing to do with Diaz or Diaz's murder trial." *Id*. at 3.

On November 6, the Magistrate Judge dismissed the motion to amend complaint (docket no. 5) and the motion for temporary restraining order (docket no. 6) because the reasons to stay the case remained. *See* docket no. 10.[6] Notably, the Magistrate Judge told Rosas "it is the responsibility of Rosas to approach the state court where his charge is pending with his request to be released based upon the alleged promise of defendants." *Id*. at 3. The Magistrate Judge further stated: "the alleged promise by defendants of dismissing that charge is still subject to being fulfilled. They may have every intention of doing so. Again, even if defendants have misled Rosas, it would be his responsibility to approach the state courts with his complaint about the unfulfilled agreement." *Id*.[7] As to the motion to amend, the Magistrate Judge stated "depending upon the final outcome of his criminal case, his entire § 1983 lawsuit may become moot. If defendants fulfill the remainder of their agreement, then his claim of being misled fails." *Id*. Until the criminal matter is complete, the Magistrate Judge stated the Court "has no reason to

---

[6] There is no reference to docket no. 8.
[7] Rosas has also filed a notice of appeal of the Magistrate Judge's decision denying Rosas a temporary restraining order (docket no. 10), and motion to proceed *in forma pauperis*. Docket nos. 16 and 17. The Court denied his application to proceed *in forma pauperis* because the appeal is frivolous and not taken in good faith. *See* docket no. 20.

intervene." *Id*.

### B. Pending Motions and Magistrate Judge's Memorandum and Recommendation

Rosas has now filed a "motion to amend judgment" pursuant to Federal Rule of Civil Procedure 59(e). Docket no. 13. He argues the Court misapplied the law as to his amended complaint of October 26, 2014 (docket no. 8; referred to there as the "supplemental complaint"), because he was challenging Defendants' "policy and practice of misleading pretrial detainees into becoming informants and does not attack the validity of evidence or his confinement," citing *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005). Docket no. 14 at 1. Rosas argues he has a constitutional right not to be labeled a "snitch," and that "Defendants conspired to intentionally mislead [Rosas] into becoming an informant and then intentionally made [his] identity known to the same individuals [he] was snitching on." *Id*. at 2. He argued these two claims are not barred by *Heck* and *Kato*. *Id*.

Rosas simultaneously filed a "Motion for Emergency Injunction." Docket no. 15. The motion for an injunction stated for the first time that 1) "Defendant Davila passed a copy," of the video of Rosas informing on various TS members on June 26, 2014 to defendant Alvarado, and 2) "Defendant Alvarado passed this copy to Defendant Gonzales in which Gonzales has shown other Texas Syndicate members this video of [Rosas] 'snitching.'" Docket no. 15.

The Magistrate Judge issued a memorandum and recommendation regarding the motion to amend judgment and motion for an emergency injunction. Docket no. 16. In it, the Magistrate Judge recommended the Court deny the motion to amend judgment and keep the case stayed and administratively closed under *Kato*. *Id*. at 5-6. The Magistrate Judge also recommended the Court sever the "new" claim against Alvarado for violating the Eighth and Fourteenth Amendment as a "prison official" acting with "deliberate indifference by exposing a

prisoner to physical assault through labeling him a 'snitch' to other inmates," citing *Schreane v. Beemon*, 575 F. App'x. 486, 492 (5th Cir. 2014). *Id.* at 7.

After careful consideration, the Court rejects the Magistrate Judge's Memorandum and Recommendation because Plaintiff's Complaint, subsequent amendments, supplements, and motions for various equitable remedies, all fail to state cognizable claims upon which relief can be granted by this Court. His allegations are either conclusory and lack specificity, or his requests for relief are not of the type this Court may grant against certain defendants.

## II.    Analysis

The Court may dismiss a pretrial detainee's complaint if the claims would not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), *i.e.* are frivolous, malicious, or fail to state a claim upon which relief may be granted; or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A; *Jones v. Univ. of Texas Med. Branch Hosp. Galveston*, 236 F. App'x 931, 933 (5th Cir. 2007) ("Because the defendants were never served with the complaint there was no motion requiring a response from Jones, and the district court was permitted to sua sponte dismiss the complaint.").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim for relief must contain (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed favorably to the plaintiff. *Fernandez–Montez v. Allied*

*Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993).  To survive a 12(b)(6) motion, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Id*.

As a preliminary matter, to the extent Rosas's claims to enforce his deal with Davila via an injunction against Reed or any other Defendant are a petition for a writ of habeas corpus while his criminal charges are still pending, they come to the Court pursuant to 28 U.S.C. § 2241.  *See Stringer v. Williams*, 161 F.3d 259, 262 (5th Cir. 1998); *Dickerson v. Louisiana*, 816 F.2d 220, 224 (5th Cir.), *cert. denied*, 484 U.S. 956 (1987) (pretrial petitions are properly brought under § 2241, "which applies to persons in custody regardless of whether final judgment has been rendered and regardless of the present status of the case pending against him."). Prisoners seeking § 2241 habeas relief must exhaust state court remedies before coming to federal court.  *Dickerson*, 816 F.2d at 224–225; *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 489–90 (1973); *Robinson v. Wade*, 686 F.2d 298, 302–03, 303 n. 8 (5th Cir. 1982) ("Although section 2241 contains no statutory requirement of exhaustion like that found in section 2254(b), exhaustion of state remedies has been held a necessary prelude to its invocation.").  Rosas's § 2241 habeas claims are dismissed because he has not exhausted his state court remedies.

### A.  False Promises Claims against District Attorney Reed

The Complaint alleges Rosas "sent a letter to Defendant Reed in regards to" two homicides he had previously given information on to the NCPD on May 9, 2014.  Docket no. 1 at 2.  He later "sent an affidavit to Reed . . . in regards to rumors" that Rosas was "snitching," and his "deal with Davila."  *Id*. at 4.  Finally, the Complaint alleges his attorney, Garza, told him

twice that he knew of no deal, including after speaking "with someone in the" district attorney's office who said "no one knows of any deal." *Id*. at 5.

Rosas alleges claims against Reed for: 1) constitutional violations stemming from false promises or a breached plea agreement; 2) Eighth and Fourteenth Amendment violation for labeling him a "snitch" or "failure-to-protect" a pretrial detainee; and 3) conspiracy.

State prosecutors like Reed have absolute prosecutorial immunity from § 1983 actions. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976) (holding state prosecutors are immune from civil suits seeking damages under § 1983 for acts committed in initiating and presenting the State's case). Still, "[w]hen a prosecutor makes some agreement or promise to elicit a plea, that promise or agreement must be fulfilled." *United States v. Jordan*, 845 F. Supp. 28, 31 (D.D.C.) *aff'd*, 43 F.3d 712 (D.C. Cir. 1994) (citing *Santobello v. New York,* 404 U.S. 257, 262 (1971)).

Rosas's only allegations that he communicated with District Attorney Reed's office were letters from him alerting Reed about his conversations with Davila, Alvarado, and other officers. *See id*. at 2 and 4. Rosas fails to allege he ever reached an agreement with a district attorney, or even received an offer from a prosecutor there. He fails to allege he ever spoke to anyone at the district attorney's office, aside from his attorney checking with them and discovering no agreement or discussions with Rosas. *See* docket no. 1 at 5. He fails to allege anyone from the district attorney's office ever promised him anything, nor could anything the office ever communicated to him have been construed as a promise, because he never spoke to anyone there.

The Complaint alleges Rosas complained to his attorney, "[I]f no one knows then why haven't they done anything about Davila using Reed to make false deals for information." *Id*. He alleges this is actionable "deliberate indifference" to his constitutional rights. To the extent Rosas is alleging a *respondeat superior* theory of liability against Reed, the Corpus Christi

11

Police Department and Nueces County Sherriff's Office are entirely separate entities from the Bexar County District Attorney's Office. Reed has no supervisory authority or control over officers in those departments. Even if Reed had supervisory authority over Bexar County Sheriff's Office Criminal Investigator David Davila, a supervisor cannot be liable under a *respondeat superior* theory of liability. *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) ("Supervisory officials cannot be held liable under section 1983 for the actions of subordinates, such as Hill, on any theory of vicarious or *respondeat superior* liability.") (citing several Supreme Court cases). Instead, a plaintiff must allege specific personal conduct against the supervisor showing deliberate indifference to support his claims. *Id*. Rosas fails to allege any such conduct. Rosas fails to allege sufficient acts to show Reed had any knowledge of what Rosas alleges occurred between him and Davila. His only claims are that he sent her letters and she did not respond. That is insufficient to demonstrate deliberate indifference.

### B. False Promises and Due Process Claims Against Officers Davila and Alvarado

Rosas makes numerous allegations against Officers Davila and Alvarado, none of which support claims upon which this Court can grant relief at this time. Rosas alleges he met or spoke with Davila on several occasions where he "passed on homicide information," or informed on prison inmates. Docket no. 1 at 2-4. At their first meeting, Rosas alleges Davila asked what he "wanted in return for his testimony," and Rosas said "he wanted his charges dismissed." *Id*. at 2. Next, at the meeting where Rosas was videotaped giving information to the police, Rosas alleges, without specifying who agreed, that "it was agreed that in exchange for Rosas [sic] assistance his charges would be dismissed." *Id*. at 3. FBI Agent "Willie" allegedly then "explained that CCPD detectives would see the interview and if the[y] felt the information was

good, Davila would be sent the 'paperwork' to dismiss Rosas's charges." *Id*. Alvarado, a CCPD detective, next came to interview Rosas. Rosas gave Alvarado some information. "Alvarado then informed Rosas that his information was good and that Alvarado would send the paperwork to get Rosas's charges dismissed for his cooperation." *Id*.

When Rosas was indicted, Davila allegedly told him "not to worry," because the step was just "procedural." *Id*. Over the course of two months, Rosas allegedly made 13 phone calls from jail to Davila, informing him on cases discussed by prison inmates. On three of those calls, Davila "assured Rosas that Davila was in contact with someone and that Davila was going to get Rosas's charges dismissed." *Id*. at 4. In another call, Davila again allegedly "promised Rosas that not to worry, Davila would help him." Davila was allegedly waiting for Alvarado "to send the paperwork." *Id*.

Rosas alleges claims against Davila and Alvarado for: 1) constitutional violations stemming from false promises or a breached plea agreement; 2) denial of due process for access to the courts; 3) snitch" or "failure-to-protect" a pretrial detainee; and 4) conspiracy.

The type of cases relevant to Rosas's claims for false promises are those involving official plea deals where prosecutors allegedly do not abide by the agreement, and prisoners are seeking enforcement of the deal or a revocation of their plea. *See, e.g.*, *San Pedro v. United States*, 79 F.3d 1065, 1068-69 (11th Cir. 1996) (involving a plea agreement where the government agreed not to seek deportation and the prisoner sought to enforce that agreement); *United States v. Alegria*, 3 F. Supp. 2d 151, 151 (D.P.R. 1998) *aff'd*, 192 F.3d 179 (1st Cir. 1999) (involving an allegedly breached plea agreement where prosecutor did not seek downward departure as promised).

"For the government to be bound by agreements in plea situations, the agent making the

promise must be authorized to do so, and second, the defendant must detrimentally rely on the promise. If either condition is lacking, then the agreement is unenforceable and the government may withdraw its offer." *San Pedro*, 79 F.3d at 1068 (citing *Johnson v. Lumpkin*, 769 F.2d 630 (9th Cir. 1985)). "The agent must possess actual authority to make the promise—either express authority or authority implied in or incidental to a grant of express authority." *Id.* (citing *Thomas v. INS*, 35 F.3d 1332, 1338 (9th Cir. 1994). Apparent authority does not suffice. *See Utah Power & Light Co. v. United States*, 243 U.S. 389, 408–09 (1917); *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947).

Applying these principles to Rosas's alleged claims, Davila and Alvarado did not have actual or implied actual authority to bind the district attorney to dismiss Rosas's charges in exchange for the information he provided them. Discussions with police officers are not plea negotiations and "agreements" reached are not plea deals. Even if officers in this case did have actual authority to negotiate plea deals, § 1983 damages do not appear available as a remedy for breach of any deal.[8]

The second type of potentially relevant cases to Rosas's claims for false promises are those that provide repercussions for officers making false promises about dismissing charges or leniency to pretrial detainees. Any information officers receive about an informant's own case cannot be used against him if elicited after false promises of dropping charges or leniency, as the statements are held "involuntary." *See, e.g.*, *United States v. Rutledge*, 900 F.2d 1127, 1130 (7th Cir. 1990) (holding that fraudulent promises to an arrestee that statements would not be used against him meant those statements were involuntary and could not be used against the arrestee at his trial); *Quartararo v. Mantello*, 715 F. Supp. 449, 460–61 (E.D. N.Y.), *aff'd without*

---

[8] Notwithstanding the Court has already stated, to the extent the Complaint seeks an injunction to enforce the agreement; those claims are dismissed as premature petitions for habeas corpus.

14

*opinion*, 888 F.2d 126 (2nd Cir. 1989).

If Rosas has alleged sufficient facts to raise a false promises claim beyond a speculative level, he does not state a § 1983 claim. Rosas would only be entitled to seek in his state court proceedings that those statements or information be deemed "involuntary statements," thus making them inadmissible at his state criminal trial.

Further, it is not clear from Rosas's Complaint what information could be used against him or how he would be harmed by the information. The Complaint, read generously, appears to claim he is worried any information he gave to Officers Davila and Alvarado about his own case, including "intentions and strategies," might be used against him. *See* docket no. 1 at 6. He also alleges information he might have given to Davila and Alvarado is the kind that "could have been passed on to the" prosecutor to lead to an indictment. *Id*. First, Rosas fails to say what information he divulged to the officers that might be used against him in his own proceedings. Second, Rosas pleads no facts or allegations that such information, whatever it was, was in fact passed to a prosecutor and used for his indictment. Third, because he has not gone to trial, and there is no indication anywhere in the Complaint or record that Davila or Alvarado in fact passed information to the prosecutors in Rosas's case, or have ever planned to testify in his case, Rosas's claims that information might be used against him are conclusory, pure conjecture, and premature.

Rosas argues in his motion for amended judgment that his § 1983 claim for injunctive and declaratory relief is not foreclosed by *Kato* because he is attacking the policies and practices of defendants misleading pretrial detainees into becoming informants, citing *Wilkinson v. Dotson*, 544 U.S. 74 (2005). Docket no. 14. Because the Court is dismissing the Complaint for failure to state claims upon which relief can be granted, the Court does not address this argument

except to note that Rosas does not challenge an official State procedural policy like in *Wilkinson*. Instead, he is attempting to challenge a course of action allegedly taken by individual state actors, and he has not alleged sufficient facts to show an official "policy."

With regard to Rosas's Due Process claims for being "denied access to the courts," those claims are denied as Rosas has not been denied any access to the state court and he is free to file any motion in the state court where his criminal action is pending.

### C.   "Snitch" Claims in the Emergency Injunction Motion

Rosas argues the Defendants violated his constitutional rights not to be labeled a "snitch," citing *David v. Hill*, 401 F. Supp. 2d 749, 757 (S.D. Tex. 2005), and *Jackson v. Johnson*, 15 F. Supp. 2d 341, 364 (S.D. N.Y. 1998).

The Magistrate Judge stated in his Report and Recommendations that Rosas may have a Fourteenth Amendment claim against Alvarado for deliberate indifference for the prisoner's safety by labeling him a snitch. *See Schreane v. Beemon*, 575 F. App'x. 486, 492 (5th Cir. 2014), *cert. denied*, No. 14-6826, 2014 WL 5364744 (U.S. Dec. 8, 2014).  However, pretrial detainees can only properly assert Fourteenth Amendment[9] claims against "prison officials." *See e.g.*, *Adames v. Perez*, 331 F.3d 508, 515 (5th Cir. 2003) ("[A] *prison official* acts with deliberate indifference if he helps create a risk to an inmate's health or safety.") (emphasis added); *White v. Fox*, 470 F. App'x 214, 220 (5th Cir. 2012) ("To establish a failure-to-protect claim, a prisoner must show that he was incarcerated under conditions posing a substantial risk of serious harm and that *prison officials* were deliberately indifferent to his need for protection.") (emphasis added) (internal quotations and citations omitted); *Horton v. Cockrell*, 70 F.3d 397, 401 (5th Cir. 1995) (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)).

Alvarado is a CCPD detective; he is not a prison official at the Nueces County Jail where

---

[9] This claim is often discussed as an Eighth Amendment claim in the applicable cases.

16

the Plaintiff is currently held. Davila and Reed are likewise not prison officials. Because they are not prison officials, the Defendants have no constitutional "responsibility to protect" the Plaintiff while he is incarcerated, and no authority to do so. *Schreane*, 575 F. App'x at 492 ("The [Fourteenth] Amendment duty to protect inmates from harm can be violated when a prison official acts with deliberate indifference by exposing a prisoner to physical assault through labeling him a 'snitch' to other inmates."). Without the duty or power to protect him, the Defendants are not the proper defendants, and this Court not the proper court, to provide Rosas with the remedy he seeks: an injunction to protect him from TS while he is in prison in Corpus Christi, and to confiscate the videotape. If Rosas wishes to pursue his injunction, he should file a lawsuit in the Corpus Christi Division of the Southern District of Texas against Nueces County Jail officials so that he can obtain the protection he seeks, if he is able to prove his claims. Thus, the "snitch," or "failure-to-protect," claims fail against each Defendant.

In the alternative, Rosas fails to state a claim against any Defendant named in the Complaint for Fourteenth Amendment "failure-to-protect" or "snitch" liability because he does not allege sufficient facts to raise the claim above the speculative level. While he alleges the videotape was given to prosecutors in some documents (i.e. docket nos. 4 and 6), he alleges Alvarado showed the video directly to TS members in others (i.e. docket no. 15). These statements are contradictory. Further, Rosas fails to state how he knows this happened. Rosas's claims failure-to-protect claims would not survive a Rule 12(b)(6) motion to dismiss.

### D. Conspiracy

The Complaint makes one conclusory allegation about a "conspiracy" between Davila and Alvarado that is insufficient to state a § 1983 civil conspiracy claim. *See* docket no. 1 at 5. Later filings, particularly the "Supplemental Complaint," Motion for Emergency Injunction

(docket no. 15), and the brief supporting his live motion to amend judgment (docket no. 14), appear to clarify, at least partially, this claim.

"To prevail on a § 1983 civil conspiracy claim, the plaintiff must show: (1) an agreement between the defendant and at least one other person acting under color of state law to commit an illegal act, and (2) an actual deprivation of the plaintiff's constitutional rights in furtherance of that agreement." *McCall v. Peters*, No. CIV.A.3:00-CV-2247-D, 2002 WL 31160141, at *7 (N.D. Tex. Sept. 24, 2002) *aff'd*, 74 F. App'x 389 (5th Cir. 2003) (citing *Hicks v. Bexar County, Tex.*, 973 F. Supp. 653, 676 (W.D. Tex. 1997). Rosas's conspiracy claims fail on both prongs.

Essentially, Rosas alleges that Davila, Alvarado, and perhaps either the Bexar County District Attorney or Nueces County District Attorney Reed, through prosecutor "JDP", conspired together to induce him to become a prison informant, and then intentionally and maliciously divulged his identity to the TS, a prison gang, knowing it "would result in the beating and possible death of [Rosas]." *See* docket no. 8 at ¶ 27; docket no. 14.

The conspiracy claim fails at the first prong. First, Rosas does not properly allege facts to support what illegal act the officers and either District Attorney, or anyone else, entered into. The only potential agreement alleged is that the officers were going to get paperwork done to get his charges dismissed. Rosas fails to state what, if any, illegal act was engaged in by the Defendants with regard to the sharing of the videotape.

Rosas alleges that Diaz is a TS member. *See* docket no. 1 at 3. He alleges the "Defendants" intentionally gave the tape to TS members, labeling him a "snitch" and putting him in danger. Docket no. 15. Rosas, however, fails to allege that this was an illegal act. The officers could have been acting pursuant to *Brady v. Maryland*, 373 U.S. 83, 86 (1963).

### III.   Conclusion

The alleged claims against District Attorney Reed are conclusory and barred by prosecutorial immunity.

The § 1983 claims for damages against Davila and Alvarado are barred by *Heck* if Plaintiff is found guilty, and the Eighth and Fourteenth Amendment "snitch" claims fail as a matter of law.  If Plaintiff is found not guilty during his state criminal trial, his § 1983 claim for compensatory damages for improper pretrial detention fails because he has properly been held by the State because he has valid criminal charges against him.  Any "agreements" he reached with police officers to secure dismissal of his charges do not bind the District Attorney to release him.  The Court cannot grant any of the relief Plaintiff seeks against these Defendants.

To the extent Plaintiff seeks relief for any failure by Nueces County prison officials to protect him, he must file any such claim in the Southern District of Texas, Corpus Christi Division.

For all of the above reasons, the Court REJECTS the Magistrate Judge's Report and Recommendation (docket no. 16), DENIES the motion for amended judgment (docket no. 13) and motion for emergency injunction (docket no. 15), and DISMISSES the Complaint (docket no. 1).

SIGNED this 2nd day of February, 2015.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE